**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>       *Plaintiff*,<br><br>       v.<br><br><br>TERMAS DEL ARAPAY MANAGEMENT S.A.; and BOL-SB HOUSE S.A.,<br><br>       *Defendants*. | Case No. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jane Doe[1] ("Plaintiff"), individually and on behalf of all others similarly situated, through undersigned counsel, hereby alleges the following against Termas Del Arapay Management S.A. and BOL-SB House S.A. (collectively, "Defendants" or "BetOnline"), based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations and experiences specifically pertaining to Plaintiff which are based upon her personal knowledge.

### NATURE OF THE CASE

1.     This case arises out of Defendants' operation of an illegal casino and online sports gambling platform that is prohibited under various state laws.

2.     Defendants own, operate, and receive revenue from the online casinos available at

---

[1] Plaintiff brings this action under the pseudonym "Jane Doe" to protect her privacy and prevent severe reputational and professional harm that would result from public disclosure of her identity in connection with the allegations set forth herein. Plaintiff intends to move for leave to proceed under a pseudonym and to file her true name under seal. *See, e.g., EW v. N.Y. Blood Center*, 213 F.R.D. 108 (EDNY 2003); *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (EDNY 2006).

Betonline.ag, Sportsbetting.ag, Tigergaming.com, WildCasino.ag, SuperSlots.ag, HighRollerCasino.ag, and QueenBeeCasino.ag, which offer casino-style sportsbooks, racebooks, casino games, and poker (collectively, the "BetOnline Gambling Platform").

3.     Through the BetOnline Gambling Platform, users can place bets on the outcome of sports games, individual player metrics, team results, and a combination of events (i.e. Parlays), while also engaging in other traditional casino games of chance such as blackjack, slots, and poker, among thousands of others. These bets materially resemble those offered at traditional casinos or sportsbooks.

4.     Throughout the class period, the BetOnline Gambling Platform has routinely been marketed as legal online gambling. Indeed, Defendants have repeatedly misled New York consumers that through the BetOnline Gambling Platform, they can legally gamble on their website.

5.     In reality, however, Defendants operate offshore internet gambling websites that offer sports betting, casino games, and other games of chance to individuals located in New York, despite lacking any license or authorization from the State of New York.

6.     As a result of Defendants' misconduct, unlawful offshore gambling enterprise has already drawn formal enforcement action from state regulators, resulting in their effective exclusion from multiple U.S. jurisdictions. For example, authorities in Massachusetts, through the Massachusetts Attorney General's Office, and in Michigan, through the Michigan Gaming Control Board, issued cease-and-desist orders prohibiting Defendants from offering unlicensed casino games and sports wagering within their respective states. These enforcement actions reflect regulators' determination that Defendants' offshore casino operation constitutes an illegal, unlicensed gambling enterprise that unlawfully targets and exploits U.S. residents while evading

state regulatory oversight and consumer protection requirements.

7.    Virtual gambling is highly addictive and strictly regulated in New York. By law, online gambling can only be offered by licensed operators who abide by numerous rules and regulations designed to protect the public. The BetOnline Gambling Platform continues to operate in New York illegally and continues to be marketed and made accessible to residents of almost all states across the country, including those in New York.

8.    Through its operation of an unlicensed gambling platform, BetOnline has violated applicable state anti-gambling laws, engaged in deceptive practices, and unjustly enriched itself at the expense of consumers in the United States, including New York.

9.    Plaintiff, individually and on behalf of all others similarly situated, seeks all available remedies at law and equity, including damages, restitution, declaratory, and injunctive relief.

## PARTIES

10.    At all times material hereto, Plaintiff has been and is a citizen of, and domiciled in, Queens County, New York.

11.    Defendant Termas Del Arapay Management S.A. is a private company organized and existing under the laws of Panama, with a place of business in Panama. Defendant Termas Del Arapay Management S.A. has operated and continues to operate the BetOnline Gambling Platform at Betonline.ag, Sportsbetting.ag, Tigergaming.com, WildCasino.ag, SuperSlots.ag, HighRollerCasino.ag, and QueenBeeCasino.ag, and has received and continues to receive substantial revenue from the losses sustained by players who have wagered and continue to wager on the BetOnline Gambling Platform, including New York residents.

12.    Defendant BOL-SB House S.A. is a private company organized and existing under

the laws of Panama, with a place of business in Panama. Defendant BOL-SB House S.A. has operated and continues to operate the BetOnline Gambling Platform at Betonline.ag, Sportsbetting.ag, Tigergaming.com, WildCasino.ag, SuperSlots.ag, HighRollerCasino.ag, and QueenBeeCasino.ag, and has received and continues to receive substantial revenue from the losses sustained by players who have wagered and continue to wager on the BetOnline Gambling Platform, including New York residents.

<u>**JURISDICTION AND VENUE**</u>

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) the proposed class exceeds 100 members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (iii) at least one member of the Class is a citizen of a different state than Defendants.

14.     The Court has personal jurisdiction over Defendants because both of the Defendants, acting in concert with one another, purposefully directed their conduct toward New York, including by advertising and marketing the BetOnline Gambling Platform to persons in New York, knowingly accepting registrations and wagers on the BetOnline Gambling Platform from Plaintiff and numerous other persons in New York, processing payments to and from New York, and deriving substantial revenue from such activities. Plaintiff's claims arise directly out of and relate to Defendants' contacts with New York.

15.     Defendants' operation of the BetOnline Gambling Platform constitutes purposeful availment of the privilege of conducting activities within New York. Defendants' platform was intentionally made available to, and used by, New York residents, including Plaintiff.  Moreover, Defendants knew or should have known that their platform was accessible to New York residents, that New York residents were registering accounts, placing wagers, and incurring losses, and

Defendants continued to facilitate and derive substantial revenue from those New York-based transactions. Defendants' intentional conduct was expressly aimed at New York and caused foreseeable harm to Plaintiff and Class members in New York.

16.    Moreover, Defendants actively disseminate targeted marketing and advertisements within the state with the intent of promoting and selling its product and service to consumers in this District. As such, Defendants conduct business with sufficient minimum contacts in New York, and/or otherwise intentionally avails themselves to the New York market.

17.    Venue is proper in this District under the provision of 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's access to the platform, placement of wagers, and resulting economic injury.

18.    The amount in controversy exceeds the jurisdictional minimum of this Court.

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

### I.    *The Problem of Online Gambling*

19.    Gambling addiction in the United States has escalated into a significant public health crisis, fueled by the rapid expansion of online casinos and sports betting platforms, including so called "social casinos."

20.    Since the Supreme Court's 2018 decision to legalize sports betting, the number of states with legal sportsbooks has surged from 1 to 38, with total sports wagers increasing from $4.9 billion in 2017 to $121.1 billion in 2023.[2] This proliferation has been accompanied by a dramatic rise in gambling addiction cases.[3]

---

[2]    https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction-following-legalization-of-sports-betting? (last accessed March 5, 2026).

[3] *See id.*

21.    Approximately 2.5 million adults in the U.S. suffer from severe gambling problems, while an additional five to eight million experiencing significant issues.[4] Alarmingly, individuals with gambling disorders are 15 times more likely to commit suicide than the general population.[5]

22.    Between 2018 and 2021, the National Council on Problem Gambling (NCPG) estimated that the risk of gambling addiction grew by 30%. NCPG has also seen significant increases in calls, texts and chats to the National Problem Gambling Helpline—roughly a 45% increase in calls between 2021 and 2022.[6]

23.    Further, internet searches for help with gambling addiction, such as "am I addicted to gambling", have cumulatively increased 23% nationally since *Murphy v. NCAA* through June 2024. This corresponds with approximately 6.5 to 7.3 million searches for gambling addiction help-seeking nationally, with 180,000 monthly searches at its peak.[7]

24.    The surge in gambling addiction is particularly pronounced among young men, with 10% exhibiting behaviors indicative of gambling addiction, compared to 3% of the general population.[8] Online platforms, including sportsbooks, have been identified as significant contributors to this trend. These platforms often employ addictive design features to keep users engaged.

---

[4] https://www.who.int/news-room/fact-sheets/detail/gambling. (last accessed March 5, 2026).

[5] https://news.harvard.edu/gazette/story/2025/01/online-gambling-is-on-the-rise-panel-says-we-need-to-act-now/ (last accessed March 5, 2026).

[6] https://www.ncpgambling.org/news/ncpg-statement-on-the-betting-on-our-future-act/ (last accessed March 5, 2026).

[7] https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction-following-legalization-of-sports-betting? (last accessed March 5, 2026).

[8] https://apnews.com/article/sports-betting-compulsive-gambling-addiction-d4d0b7a8465e5be0b451b115cab0fb15 (last accessed March 5, 2026).

25.     The addiction and fallout related thereto is not limited to gamblers. It has a ripple effect that negatively impacts spouses, partners, children, and employers. Moreover, despite the growing prevalence of gambling addiction, funding for treatment remains insufficient.

## II.     *New York law Prohibits Unlicensed Wagering and Sports Gambling*

26.     New York generally prohibits all commercial gambling, with limited exceptions. *See* N.Y. Const. art. I, § 9; Gen. Oblig. L. § 5-401. This prohibition reflects the State's strong public policy against online gambling. *See Ramesar v. State*, 224 A.D.2d 757, 759, 636 N.Y.S.2d 950 (1996) (noting New York's "[p]ublic policy continues to disfavor gambling.").

27.     In New York, gambling occurs when a person "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." N.Y. Penal Law § 225.00(2).[9] Both physical casinos in New York and virtual casinos that are made available to New Yorkers online are subject to these laws. *See, e.g.*, *People v. World Interactive Gaming Corp.*, 714 N.Y.S.2d 844, 846 (Sup. Ct. N.Y. Cty. 1999).

28.     New York's statutory definition of "something of value" is expansive and includes:

any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.

N.Y. Penal Law § 225.00(6).

29.     Moreover, in New York, legal gambling operations are governed by the New York Racing, Pari-Mutuel Wagering and Breeding Law. N.Y. PML §§ 100 *et seq.* Sports wagering is

---

[9] The Penal Law imposes no criminal liability on individual bettors, focusing instead on bookmakers and other operations, like Defendants, that advance or profit from illegal gambling activity. *See, e.g.*, N.Y. Penal Law § 225.10.

regulated in PML §§ 1367 and 1367-a. Section 1367-a(2)(a) of the PML provides that "[n]o entity shall administer, manage, or otherwise make available a mobile sports wagering platform to persons located in New York state unless licensed with the commission."

30.     New York law defines "Sports wagering" as: "[w]agering on sporting events or any portion thereof, or on the individual performance statistics of athletes participating in a sporting event, or any combination of sporting events, by any system or method of wagering, including, but not limited to, in-person communication and electronic communication through Internet websites accessed via a mobile device or computer, and mobile device applications; provided, however, that sports wagers shall include, but are not limited to, single-game bets, teaser bets, parlays, over-under bets, money line bets, pools, in-game wagering, in-play bets, proposition bets, and straight bets." N.Y. PML § 1367(x).

31.     Other than wagering allowed under the PML through licensed entities, "[a]ll wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful." N.Y. Gen. Oblig. § 5-401.

32.     New York also generally prohibits deceptive acts and practices, including false advertisements. *See* New York General Business Law Section 349(a) ("[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful") and 350 ("false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.").

33.     Defendants blatantly disregard New York's clear prohibition on gambling. As discussed further below, the BetOnline Gambling Platform allows users to place bets on the outcome of sports games, individual player metrics, team results, and/or a combination (i.e.

Parlays), while also engaging in thousands of games of chance such as blackjack, poker, and slots, among numerous others. These bets materially resemble those offered at traditional casinos and sportsbooks.

34.     Indeed, a user that wagers on Defendants' platform is "stak[ing] or risk[ing] something of value"—real-world currency—"upon the outcome of … a future contingent event not under his control"—the results and outcomes of sports games and/or casino games of chance— "upon an agreement or understanding that he will receive something of value in the event of a certain outcome"—namely, more real-world currency, should the wagered-upon outcomes of the sports event come to fruition. Thus, BetOnline Gambling Platform's gambling sportsbook and online casino fall squarely within the ambit of New York's anti-gambling laws.

35.     On December 5, 2025, New York Governor Kathy Hochul signed Bill S05935A into law, prohibiting online sweepstakes casino games that are virtually identical to the offerings by the BetOnline Gambling Platform.[10] This followed a previous cease-and-desist letter sent by State Attorney General Letitia James to virtual casinos (otherwise known as sweepstakes casinos) in violation of the New York State Constitution.[11] That letter identified the purchase of "virtual coins" in exchange for "something of value" as the main argument for why sweeps casinos were in violation of the law in New York state.[12] Numerous other states such as Connecticut, Nevada, New Jersey, Montana, and California have since followed suit.[13] By offering similar unlicensed

---

[10]  *See*  https://www.mlive.com/sweepstakes-casinos/2025/12/new-york-governor-kathy-hochul-signs-a-sweepstakes-casino-ban-into-law.html (last accessed March 5, 2026).

[11] *Id.*

[12] *Id.*

[13] *Id.*

avenues for New York consumers to stake currency in exchange for something of value, the BetOnline Gambling Platform is equally subject to the same regulatory requirements and potential civil penalties for similarly operating unlawfully in New York.

### III.    *The BetOnline Gambling Platform allows Defendants to Profit from Real, Online Sports and Casino Gambling.*

36.    Defendants operate the BetOnline Gambling Platform, an online gambling service accessible through a website and mobile application. Defendants are headquartered in Panama and represent the BetOnline Gambling Platform as a "legally licensed and fully regulated" wagering and online gaming service.[14]

37.    To create an account to wager on the BetOnline Gambling Platform, users are required to input basic personal information, including, *inter alia*, their name, e-mail address, phone number, and a password. Once a user creates an account, they may deposit funds and immediately begin wagering those funds on games offered through the BetOnline Gambling Platform. Deposits may be made using a wide range of cryptocurrencies or by credit or debit card. Regardless of payment method, deposited funds are made instantly available for gambling upon receipt.

38.    BetOnline affirmatively represents that it is "an international company – legally licensed and fully regulated" that "offers a full range of sports wagering and online gaming services."[15] At the same time, however, BetOnline attempts to disclaim responsibility by stating that "[w]agering laws may vary from country-to-country and state-to-state. Please check with your

---

[14] https://www.betonline.ag/faq (last accessed March 5, 2026).

[15] *Id.*

local government to ensure it is acceptable for you to place an online wager."[16] This contradictory messaging is  displayed prominently on Defendants' website,  as shown below:



39.    Despite the fact that numerous jurisdictions expressly prohibit the type of unlicensed and unregulated gambling offered through the BetOnline Gambling Platform, Defendants actively market the platform to New York consumers—including Plaintiff—as a lawful gambling option. Rather than restricting access or ensuring compliance with New York's gambling laws, Defendants knowingly accept wagers from New York residents and profit from their losses. Defendants' disclaimer language improperly shifts the burden of determining the platform's legality onto unsuspecting consumers, all while continuing to operate in contravention of applicable anti-gambling restrictions.

---

[16] *Id.*

40.    At its essence, the BetOnline Gambling Platform offers the same type of sports wagering and casino gambling that would be encountered at traditional casinos. Users who use the BetOnline Gambling Platform can gamble their deposited money on any of Defendants' hundreds of games, including a wide variety of sportsbooks, racebooks, casino games, and poker. Notably, the outcome of every wager placed on each of the games involves risking money on outcomes predominately determined by chance.

41.    Indeed, the sports betting offerings on BetOnline are virtually identical to what users would expect to see in a traditional sportsbook, including wagers on real-world sporting events with real-money stakes and payouts. Below is an example of how sports gambling is offered on the BetOnline Gambling Platform:



42.     As demonstrated above, the wagering options available on BetOnline Gambling Platform replicate those offered by licensed sportsbooks, such that consumers participate in betting structures indistinguishable from traditional sportsbook wagering.

43.     BetOnline Gambling Platform's platform prominently displays potential winnings, bonuses, and promotional offers, while downplaying the costs and odds. These features directly incentivize repeated transactions. These design elements gamify participation, and encourage rapid and repeated wagering, mirroring the behavioral hooks commonly used by digital gambling platforms.

44.     Thus, the conclusion is unescapable: the wagers offered by BetOnline Gambling Platform constitute sports betting for all intents and purposes. Users risk money on the outcome of uncertain future sport events with the expectation of receiving monetary payouts. These bets are functionally identical to those offered by traditional sportsbooks and casinos, further underscoring that consumers are engaging in unlawful sports betting while being misled about its purported legality.

45.     The casino-style offerings on the BetOnline Gambling Platform likewise mirror those offered by traditional licensed casinos. When players log onto the website, they are met with rows of games to choose from, including slots and jackpot games, as shown below:



46.     Taking its casino offerings one step further, in addition to automated games, BetOnline also offers a "live casino" feature, where users play games like blackjack and roulette with live human dealers who streamed via webcam, closely mimicking the experience of a physical casino. Once switched over to the "live casino" tab, users are prompted with similar rows of available live dealer games, as shown below:



47.     Indeed, BetOnline prominently markets this feature to consumers nationwide, including those in New York, such as Plaintiff:



48.    By offering all of the hallmarks of lawful sports betting and casino gambling to consumers in states where it lacks licensure or authorization—including New York—Defendants operate as an illegal and unregulated gambling enterprise. By making the BetOnline Gambling Platform available to New York residents, and by deriving millions of dollars in revenue from losses sustained by those residents, Defendants have engaged in large-scale violations of New York's gambling laws.

49.    In New York, it is illegal to operate and offer online gambling casinos. *See* N.Y. Const. art. I, § 9; N.Y. Gen. Oblig. L. § 5-401. In this regard, New York has a fundamental and deep-rooted public policy against gambling.

50.    Despite New York's clear prohibition on online gambling, Defendants operate an unlicensed and illegal online sports betting and casino gambling enterprise accessible to users within New York.

51.    Users of BetOnline Gambling Platform stake or risk something of value when wagering on sports or Defendants' games of chance. Specifically, players wager real-world currency for the possibility of winning more real-world currency on sports events and casino games, the outcomes of which are determined predominantly by chance rather than skill. In essence, BetOnline Gambling Platform mirrors the fundamental mechanics of real-money

gambling, in which players risk a valuable consideration for the opportunity to win additional value.

52.    Under New York law, a "game of chance" includes any "contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." N.Y. Penal Law § 225.00(1); *see also White v. Cuomo*, 38 N.Y.3d 209, 228, 192 N.E.3d 300 (2022) (holding that the Constitutional prohibition on gambling reaches "the staking of value on a game in which the element of chance predominates over the element of skill[.]").

53.    The BetOnline Gambling Platform requires consumers to stake or risk "something of value upon the outcome of a contest of chance or a future contingent event not under their control or influence, upon an agreement or understanding that they will receive something of value in the event of a certain outcome," thereby satisfying the definition of gambling under New York law and violating Racing Law § 1367(1)(t).

54.    Racing Law § 1367-a(4)(b) provides that "[n]o entity shall directly or indirectly operate an unlicensed sports wagering platform in the state of New York, or advertise or promote such unlicensed platform to persons located in the state of New York." Defendants violate this provision by operating an unlicensed sports wagering platform in New York and advertising that platform to New York residents.

55.    The facts are clear: BetOnline Gambling Platform's unlicensed sports and casino wagering operations violate New York law and undermines the State's regulatory scheme. By operating outside the licensing system, the BetOnline Gambling Platform avoids the robust taxes paid by lawful operators and evades the oversight mechanisms that New York relies upon to monitor gambling activity, including ensuring that legalized gambling is conducted in a manner

consistent with the State's values and public policy.

56.     In sum, the BetOnline Gambling Platform facilitates illegal wagering on sports and casino games predicated on outcomes that are completely determined by chance. By offering the ability to engage in unlawful betting, Defendants operate an unlicensed online casino in violation of New York law, which explicitly prohibits gambling on games of chance conducted over the internet. N.Y. Gen. Oblig. L. § 5-401; N.Y. Penal Law § 225.00(1).

**IV.     *The BetOnline Gambling Platform Willfully Accepts Deposits from New York Users Despite Knowing that it is Illegal in the State***

57.     Defendants market the BetOnline Gambling Platform as a legal sportsbook and casino to induce consumers to use its services. Through bold slogans, prominent disclosures, and representations that the platform is "legally licensed and fully regulated," Defendants create the impression that their services are lawful, despite offering unlicensed gambling and sports betting in violation of multiple state gambling laws.

58.     Defendants continuously and intentionally target consumers nationwide, including those in New York. As a result, unaware consumers that are targeted by the BetOnline Gambling Platform are deceived into believing their wagers are lawful, when in reality, they are participating in Defendants' illegal gambling enterprise.

59.     Upon information and belief, Defendants maintain win and loss records and account balances for each person who creates an account and places wagers on the BetOnline Gambling Platform. Once an outcome of a wager is determined, Defendants adjust a wagering user's account balance commensurate with the outcome they wagered upon. Upon information and belief, Defendants keep detailed records of each wager placed on the BetOnline Gambling Platform.

60.     Using information users provide when registering accounts and making deposits,

as well as analyses of users' IP addresses, upon information and belief, Defendants possess detailed knowledge of—and maintain records identifying—the geographic locations, including the city and state for U.S.-based players, from which each user registered, funded their account, and placed and lost wagers on the BetOnline Gambling Platform. Thus, Defendants are acutely aware of each New York resident who accesses their unlicensed casino games within the geographical confines of New York state. Defendants' own records therefore affirmatively identified Plaintiff and Class members as New York–based users at each relevant juncture, including when they enrolled, deposited funds, and incurred gambling losses.

61.    Despite possessing this clear and specific knowledge, Defendants knowingly permitted Plaintiff and Class members to access the BetOnline Gambling Platform from within New York, actively facilitated their participation, accepted their deposits, and processed and retained the funds they lost. At no point did Defendants take meaningful steps to prevent New York residents from wagering on the platform or to refuse or return unlawfully obtained gambling proceeds. Instead, Defendants knowingly and deliberately profited from these transactions, systematically accepting wagers from New York–based users and retaining the resulting losses for their own financial gain.

62.    Through extensive and far-reaching marketing and promotional efforts, Defendants deliberately targeted and solicited persons located in New York, advertising and portraying the BetOnline Gambling Platform as a legitimate, lawful, and trustworthy online business. Through these representations—disseminated via online advertisements, promotional materials, direct electronic communications, and affiliate marketing channels—Defendants cultivated an appearance of legitimacy and compliance, thereby inducing Plaintiff and Class members in New York to reasonably believe that they were participating in a lawful and authorized platform.

63.     In truth, however, the BetOnline Gambling Platform operates as an illegal and unregulated gambling enterprise. By knowingly making the BetOnline Gambling Platform accessible to persons located within New York, and by actively soliciting, accepting, and retaining wagers placed by New York residents, Defendants engaged in unlawful gambling activities in direct contravention of New York law. Defendants' misconduct was not isolated or incidental; rather, it was systematic and substantial. Through their unlawful conduct, Defendants collected and retained millions of dollars in gambling losses from New York residents, reaping enormous profits from transactions they knew were unlawful while deliberately cloaking their enterprise in a false veneer of legitimacy to avoid detection and maximize revenue.

## V.     *Defendants Offers Gambling Without Statutory Consumer Protections*

64.     The harm caused by the BetOnline Gambling Platform's illegal gambling operation is further exacerbated by its lack of accountability and regulatory oversight. Unlike licensed casinos and sportsbooks, which must comply with strict requirements to ensure fairness, transparency, and consumer protections, Defendants operate without these safeguards. The absence of oversight leaves players vulnerable to unfair practices, such as manipulated game outcomes, misleading promotions, and nonexistent or inadequate mechanisms to address problem gambling.

65.     Defendants' illegal casino actively undermines critical consumer protections required by New York law. For example, upon information and belief, Defendants allows anybody over the age of 18 to gamble on their platform in complete disregard for the laws prohibiting individuals under the age of 21 to gamble in New York. *See, e.g.*, N.Y. RAC. PARI- MUT. WAG. & BREED. LAW § 1332(1) ("No person under the age at which a person is authorized to purchase and consume alcoholic beverages shall enter, or wager in, a licensed gaming facility"); N.Y.

COMP. CODES R. & REGS. TIT. 9, § 5313.2(b) (**"**A gaming facility licensee shall post signs that include a statement that is similar to the following: 'It is unlawful for any individual under 21 years of age to enter or remain in any area where gaming is conducted. It is unlawful for any individual under 21 years of age to wager, play or attempt to play a slot machine or table game. Individuals violating this prohibition will be removed and may be subject to arrest and criminal prosecution.' Such signs shall be posted prominently at each entrance and exit of the gaming floor."); § 5313.2(c) ("A gaming facility licensee shall identify and remove any person who is under 21 years of age and not otherwise authorized by law to be on the gaming floor and immediately notify onsite commission staff when a person under 21 years of age is discovered on the gaming floor, in areas off the gaming floor where gaming activity is conducted or engaging in gaming-related activities."); § 5329.19(a) ("No person under 21 years of age may place a wager with a casino sports wagering licensee").

66.    Upon information and belief, Defendants further disregard the consumer protection laws that require casinos and sportsbooks to conspicuously post signs that inform patrons how to obtain assistance with problem gambling and provide instructions on accessing the New York's Voluntary Self-Exclusion Program. *See, e.g.*, N.Y. COMP. CODES R. & REGS. TIT. 9 § 5325.2(a) (requiring each gaming facility licensee to "submit for commission review and approval a problem gambling plan"); § 5325.4(a) (requiring each gaming facility licensee to "submit to the commission quarterly updates and an annual summary of its problem gambling plan and goals"); § 5325.5 (requiring each gaming facility licensee to "post signs in a size as approved in writing by the commission that include the problem gambling assistance message" approved by the commission); § 5325.6(b) (requiring all advertisements to "contain a problem gambling assistance message comparable to one of the following: (1) If you or someone you know has a gambling

problem, help is available. Call (877- 8-HOPENY) or text HOPENY (467369); (2) Gambling

Problem? Call (877-8-HOPENY) or text HOPENY (467369); or (3) any other message approved

in writing by the commission."); § 5325.6(c)(4)(i) ("for websites, including social media sites and

mobile phone applications, the problem gambling assistance message must be posted on each

webpage or profile page and on any gaming-related advertisement posted on the webpage or profile

page"); § 5327.1(b) ("Each gaming facility licensee shall exclude from its premises any person

who such gaming facility licensee knows meets the exclusion criteria"); § 5327.3 ("The placement

of a person on the excluded persons list shall have the effect of requiring the exclusion or ejection

of the excluded person from all New York State licensed gaming facilities."); § 5329.34 ("Each

casino sports wagering licensee and sports pool vendor licensee shall comply with the problem

gaming, self-exclusion and excluded person requirements.")

67.    Moreover, New York law prohibits sports betting on New York college sports

teams. Yet, those exact wagers may be found on the BetOnline Gambling Platform. For example,

in the image below, the BetOnline Gambling Platform offers bets on the University of Buffalo's

basketball team:

*Screen capture of the BetOnline Gambling Platform's website dated Feb. 24, 2026,*
*displaying wagers on New York college sports teams*

**VI.    *States are Cracking Down on Unlawful Sports Betting***

68.    State regulators have taken enforcement action against Defendants' unlawful gambling operations, confirming that the BetOnline Gambling Platform operates without required licensure in multiple jurisdictions. Indeed, numerous states have begun to crack down on its unlawful gambling operations.

69.    On April 28, 2025, the Michigan Gaming Control Board ("MGCB") issued cease-and-desist orders to the operators of SportsBetting.ag and BetOnline.ag for conducting illegal gambling activities in Michigan.[17] The MGCB found that the BetOnline Gambling Platform is in violation of Michigan's Lawful Internet Gaming Act, Gaming Control and Revenue Act, and Michigan Penal Code. Specifically, the MGCB determined that BetOnline.ag has been facilitating a range of illegal betting options, including sports betting, live events, casino-style games (slots, table games, blackjack, poker), horse racing, esports, and various contest tournaments, and that these activities, which involve real-money wagers, can be funded via credit card, wire transfer, or cryptocurrency, all while neither platform held the necessary licenses to operate in Michigan.

70.    Similarly, on June 25, 2025, Massachusetts regulators issued cease-and-desist letters against the BetOnline Gambling Platform, specifically BetOnline.ag and Sportsbetting.ag, for operating online gambling platforms that include casino-style games such as slots, blackjack, roulette, baccarat, and poker, as well as betting on most U.S. major league sports and horse races,

---

[17] Michigan Gaming Control Board issues cease-and-desist orders to SportsBetting.ag and BetOnline.ag for illegal operations (Apr. 28, 2025) https://www.michigan.gov/mgcb/news/2025/04/28/mgcb-issues-cease-and-desist-orders-to-sportsbetting-and-betonline

without the necessary licenses issued by the Massachusetts Gaming Commission as required under Massachusetts law.[18]

71.    Many other states will likely follow suit. In October 2023, the New York Gaming Commission adopted New York Rule 5602.1(a)(4), which explicitly outlaws the kind of "proposition betting," or bets made regarding the occurrence or non-occurrence during a game of an event not directly affecting the game's final outcome. That regulation states that "[c]ontests shall not be based on proposition betting or contests that have the effect of mimicking proposition betting. Contests in which a contestant must choose, directly or indirectly, whether an individual athlete or a single team will surpass an identified statistical achievement, such as points scored, are prohibited."[19]

72.    These regulatory actions further demonstrate that Defendants' conduct is unlawful and inconsistent with state gambling laws, including those of New York. Accordingly, Plaintiff, on behalf of the putative class, seeks judicial recourse to alleviate the damages suffered as a result of participating in the BetOnline Gambling Platform's illegal gambling platform.

## FACTS SPECIFIC TO PLAINTIFF

*Plaintiff's Experience*

73.    In response to BetOnline Gambling Platform's online advertising and representations described above, and under the belief that she was engaging in "legal" sports betting, Plaintiff wagered on the platform from approximately January 2025 through January 2026,

---

[18] Attorney General's Office Issues Cease-and-Desist Letters to Two Online Gambling Operators for Illegal Offshore Casino and Sports Betting Operations (Jun. 25, 2026) https://www.mass.gov/news/attorney-generals-office-issues-cease-and-desist-letters-to-two-online-gambling-operators-for-illegal-offshore-casino-and-sports-betting-operations

[19] N.Y. Comp. Codes R. & Regs. tit. 9, § 5602.1(a)(4).

placing multiple bets on sporting events.

74.    Plaintiff accessed and placed wagers on sporting events on the BetOnline Gambling Platform while located in New York.

75.    During this period, Plaintiff wagered and lost thousands of dollars in real-world currency while using the BetOnline Gambling, primarily betting on the National Football League and the National Basketball League, but also other sports, such as tennis.

76.    Plaintiff was induced into placing gambling bets that she otherwise would not have made if she knew that the BetOnline Gambling Platform's platform constituted illegal gambling in violation of numerous state laws.

77.    As a result of Defendants' unfair, unlawful, and deceptive acts, Defendants were unjustly enriched.

78.    Plaintiff has an ongoing interest in utilizing the BetOnline Gambling Platform if it were operated lawfully and in compliance with state and federal gambling laws and consumer protection statutes.

79.    Defendants' representations regarding the legality of their gambling platform are unlawful, unfair, deceptive, and misleading, because Defendants failed to warn consumers that the platform is illegal and unlicensed in the state of New York, while allowing consumers, including Plaintiff, to rely on those representations in deciding to utilize Defendants' platform.

80.    Defendants' representations were material to Plaintiff's decision to utilize the BetOnline Gambling Platform.

81.    Had Plaintiff known that Defendants platform was an illegal gambling enterprise, Plaintiff would not have utilized the BetOnline Gambling Platform. In other words, Defendants' representation of legality was important to Plaintiff's decision to utilize the BetOnline Gambling

Platform .

82.    Plaintiff and putative Class members relied on Defendants' representations in deciding to use the platform.

83.    Plaintiff was suffered economic injury, including the loss of money wagered on Defendants' platform.

84.    Plaintiff has also become addicted to gambling; has experienced anxiety, shame, stress, and suicidal ideation; and has begun going to therapy for gambling addiction at the Columbia Gambling Disorder Clinic.

85.    Consequently, Plaintiff and other similarly situated consumers were deceived by Defendants' false, unlawful, unfair, and deceptive acts.

86.    Although Plaintiff would like to utilize the BetOnline Gambling Platform in the future, Plaintiff faces a risk of future harm because she cannot be certain that she will not be misled again unless and until Defendants accurately represents the legality of the platform.

## CLASS ALLEGATIONS

87.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b) on behalf of herself and all others similarly situated defined as follows:

88.    The Class is defined as follows:

> **New York Class**: All New York residents who, during the applicable limitations period, spent money wagering on the BetOnline Gambling Platform.

89.    Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute

and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

90.    **Numerosity.** Upon information and belief, there are hundreds, if not thousands, of Class members, so joinder of all members is impracticable. The precise number of class members and their identities are unknown to Plaintiff currently but may be ascertained from Defendants' books and records and other third-party sources.

91.    **Commonality.** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

    a.    Whether the casino games and sports wagering in the BetOnline Gambling Platform are gambling as defined under applicable state law;

    b.    Whether Defendants engaged in the conduct alleged in the Complaint;

    c.    Whether Defendants violate the statutes listed below in Counts I, II, III, and IV;

    d.    Whether Defendants violated statutes analogous to those alleged herein applicable;

    e.    Whether Plaintiff and the other Class members were damaged by Defendants' conduct; and

    f.    Whether Plaintiff and the other Class members are entitled to  restitution or other relief.

92.    **Typicality**. Plaintiff's claims are typical of the claims of the Class because she is a user of Defendants' platform who wagered real-world currency on sports games and casino games as a result of Defendants' unlawful and wrongful conduct. The factual and legal basis of

Defendants' liability to Plaintiff and to the other Class members is the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have suffered harm and damages due to Defendants' unlawful and wrongful conduct.

93.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

94.    **Predominance & Superiority.** Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the proposed Class to individually seek redress for Defendants' wrongful conduct.

95.    **Final Declaratory or Injunctive Relief.** Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## <u>FIRST CAUSE OF ACTION</u>
### Violation of the New York Loss Recovery Act

**N.Y. Gen. Oblig. L. § 5-419**
*(On Behalf of Plaintiff and the Class)*

96.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–95 by reference as if fully set forth herein.

97.     Plaintiff brings this count individually and on behalf of the Class under New York General Obligation Law § 5-419, which was enacted to effectuate the State's public policy against unlawful gambling.

98.     All forms of unlicensed gambling—including wagers, bets, or stakes—based on games of chance are unlawful in New York. N.Y. Gen. Oblig. L. § 5-401.

99.     Section 5-419 of the Loss Recovery Statute provides: "Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet prohibited, may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not." N.Y. Gen. Oblig. L. § 5-419.

100.    Accordingly, this provision of the Loss Recovery Statute prohibits a person or entity from profiting from gambling activity—whether or not they are the actual "winner" of the wager or bet—and permits the person who paid or lost the money to recover it from the recipient.

101.    Defendants' gambling enterprise solicits "wager[s] or bet[s] prohibited" because it invites users to play games of chance (e.g., betting on the outcomes of sporting events and casino games) for money, which constitutes illegal gambling under both New York civil and penal law. *See* N.Y. Gen. Oblig. L. § 5-401 ("All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."); N.Y. Penal Law § 225.00 (defining "gambling" as the

"stak[ing] or risk[ing] something of value upon the outcome of a contest of chance" and defining "gambling device," as "any device, machine, paraphernalia or equipment which is used or usable in the playing phases of any gambling activity, whether such activity consists of gambling between persons or gambling by a person involving the playing of a machine."); N.Y. Penal Law §§ 225.05225.10 (making advancing and profiting from unlawful gambling a misdemeanor or felony).

102.    Defendants' online gambling platform is an internet site that permits consumers to play games of chance (e.g., bet on the outcome of sporting events and casino games) for money.

103.    Every wager offered on Defendants' online platform is a "gambling device" because it accepts money from players, operates on chance as it relies on the outcomes of sporting events and casino games, and enables players to stake, hazard, and bet money with the potential to win or lose money.

104.    Defendants are considered the "winner" because they derive a financial benefit from the gambling activity. Every transaction generates revenue for Defendants, meaning their financial interest is tied to facilitating the illegal gambling alleged herein.

105.    Defendants are also a "stakeholder" under this provision of the Loss Recovery Statute because, on information and belief, the money wagered by Plaintiff and the Class on Defendants' platform is delivered or deposited into accounts owned or controlled by it.

106.    By purchasing, wagering, and losing money on Defendants' sports betting platform, Plaintiff and each member of the Class gambled and lost money.

107.    Defendants own, operate, and control the gambling games described herein, and directly profited from Plaintiff's and the Class members' gambling losses. Defendants are therefore the "winner[s]" under N.Y. Gen. Obligation Law § 5-419 of all moneys lost by Plaintiff and the Class

members.

108.    Defendants operate an illegal gambling website that is accessible Nationwide, including in New York. Defendants also process online consumer payments in New York.

109.    Plaintiff, on behalf of herself and the Class members, seeks an order requiring Defendants to (1) cease the operation of their gambling business, and (2) return all lost monies, with costs, pursuant to N.Y. Gen. Oblig. Law § 5-419.

**SECOND CAUSE OF ACTION**
**Violation of New York General Business Law § 349 (Deceptive Acts and Practices)**
*(On Behalf of Plaintiff and the Class)*

110.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–95 by reference as if fully set forth herein.

111.    New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the State of New York. N.Y. Gen. Bus. Law § 349(a).

112.    N.Y. Gen. Bus. Law § 349 applies to Defendants' actions and conduct as described herein because it is a broad consumer protection statute that prohibits recurring deceptive acts or practices in business transactions, including those involving the marketing and sale of goods or services to New York consumers.

113.    Plaintiff and the members of the Class are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

114.    Defendants engaged in consumer-oriented conduct by marketing their gambling platform as legal wagering when it is unlicensed, and while concealing the fact that its platform constitutes unlawful gambling with real financial risks.

115.    Defendants' practices described herein, including the operation of an illegal sports

betting casino, are deceptive under N.Y. Gen. Bus. Law § 349 because they contravene New York's public policy against unlawful and unregulated gambling, and caused substantial injury to the consumers who wagered on Defendants' platform.

116.    Defendants caused substantial injury to Plaintiff and the Class by inducing them to wager real-world currency through its illegal gambling platform. The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.

117.    Defendants' unfair practices occurred during the marketing and sale of gambling wagers on the BetOnline Gambling Platform, and thus, occurred in the course of trade and commerce.

118.    Further, Defendants conceal from consumers, including Plaintiff and the Class, that wagering on its platform constitutes illegal gambling prohibited by state law.

119.    To make matters worse, upon information and belief, Defendants disregard the consumer protection laws that require casinos to conspicuously post signs that inform patrons how to obtain assistance with problem gambling and provide instructions on accessing the New York's Voluntary Self-Exclusion Program. See, e.g., N.Y. Comp. Codes R. & Regs. Tit. 9, § 5325.2(a) (requiring each gaming facility licensee to "submit for commission review and approval a problem gambling plan"); § 5325.4(a) (requiring each gaming facility licensee to "submit to the commission quarterly updates and an annual summary of its problem gambling plan and goals"); § 5325.5 (requiring each gaming facility licensee to "post signs in a size as approved in writing by the commission that include the problem gambling assistance message" approved by the commission); § 5325.6(b) (requiring all advertisements to "contain a problem gambling assistance message comparable to one of the following: (1) If you or someone you know has a gambling

problem, help is available. Call (8778-HOPENY) or text HOPENY (467369); (2) Gambling Problem? Call (877-8-HOPENY) or text HOPENY (467369); or (3) any other message approved in writing by the commission"); § 5325.6(c)(4)(i) ("for websites, including social media sites and mobile phone applications, the problem gambling assistance message must be posted on each webpage or profile page and on any gaming-related advertisement posted on the webpage or profile page"); § 5327.2 ("Each gaming facility licensee shall exclude from its premises any person who such gaming facility licensee knows meets the exclusion criteria"); § 5327.3 ("The placement of a person on the excluded persons list shall have the effect of requiring the exclusion or ejection of the excluded person from all New York State licensed gaming facilities"); § 5329.34 ("Each casino sports wagering licensee and sports pool vendor licensee shall comply with the problem gaming, self-exclusion and excluded person requirements").

120.    Defendants aggressively market and advertise their illegal gambling platform through various media while at the same time concealing that it is illegal under state law. As such, consumers, including Plaintiff and the Class, are highly likely to continue to encounter current and future iterations of Defendants' illegal platform absent injunctive relief.

121.    Further, Defendants' conduct is deceptive because it is designed to encourage illegal gambling while marketing the platform as a legal avenue to engage in casino and sportsbook wagering, as well as to exploit psychological triggers associated with gambling and addiction in order to target susceptible populations.

122.    These deceptive practices are material and likely to mislead reasonable consumers, who are led to believe they are participating in legal and licensed gambling rather than unlawful, unregulated gambling.

123.    As a direct and proximate result of Defendants' violations of N.Y. Gen. Bus. Law

§ 349, Plaintiff and Class members have suffered actual injury in the form of monies lost wagering on Defendants' platform.

124.    Plaintiff, on behalf of herself and the Class members, seeks an order requiring Defendants to (1) cease the deceptive practices described herein, (2) return all monies acquired through any gambling wagers to Plaintiff and the New York Class, and otherwise (3) pay damages, interest, and reasonable attorneys' fees, together with costs and expenses.

### THIRD CAUSE OF ACTION
### Violation of N.Y. Gen. Oblig. L. § 5-421
### *(On Behalf of Plaintiff, the Nationwide Class, and the New York Class)*

125.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–95 by reference as if fully set forth herein.

126.    N.Y. Gen. Oblig. L. § 5-421 states that "[e]very person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof."

127.    Within the past three months, Plaintiff deposited at least twenty-five dollars into accounts owned and controlled by Defendants for the purpose of engaging in what Plaintiff was misled to believe was lawful sports and casino wagering, but in reality, was unlawful betting and/or wagering.

128.    Plaintiff lost the money she deposited by engaging in Defendants' unlawful betting and/or wagering games.

129.    Pursuant to N.Y. Gen. Oblig. L. § 5-421, Plaintiff and the Class are entitled to recover from Defendants all funds lost in connection with Defendants' unlawful gambling and/or

wagering enterprise.

130.    Accordingly, Plaintiff and the Class seek all damages, restitution, attorneys' fees, and costs of suit and/or injunctive relief.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment**
***(On behalf of Plaintiff and the Class)***

131.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–95 by reference as if fully set forth herein.

132.    Plaintiff and the Class members have conferred a benefit upon Defendants in the form of the money they wagered on Defendants' illegal gambling platform.

133.    Defendants appreciate and have knowledge of the benefits conferred upon them by Plaintiff and the Class.

134.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained from Plaintiff and the Class members, which Defendants have unjustly obtained as a result of their unlawful operation of wagering sporting and casino games. As it stands, Defendants have retained millions of dollars in profits generated from the BetOnline Gambling Platform's unlawful gambling and should not be permitted to retain those ill-gotten profits.

135.    Accordingly, Plaintiff and the Class members seek full disgorgement of all money Defendants has retained as a result of the wrongful conduct alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of all others similarly situated, the following relief:

1.     For an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the Class as requested herein, appointing Plaintiff as class representative and her counsel as class counsel;

2.     Awarding Plaintiff all economic, monetary, actual, consequential, compensatory, and punitive damages available at law and to be determined by proof;

3.     Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

4.     Awarding Plaintiff's reasonable attorneys' fees, costs, and other litigation expenses;

5.     Awarding pre- and post-judgment interest, as allowable by law;

6.     For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

7.     Declaratory and equitable relief, including restitution and disgorgement;

8.     For public injunctive and declaratory relief as the Court may deem proper; and

9.     Awarding such further and other relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.


Dated: March 5, 2026                    Respectfully submitted,


                    */s/ Woodworth B. Winmill*
                    Woodworth B. Winmill
                    Milberg, PLLC
                    405 East 50th Street
                    New York, NY 10022
                    (201) 255-1316
                    wwinmill@milberg.com

                    Gary M. Klinger (*pro hac vice* forthcoming)

Milberg, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Gabriel Mandler (*pro hac vice* forthcoming)
Omer Kremer (*pro hac vice* forthcoming)
Edelsberg Law, P.A.
20900 NE 30th Ave Suite 417
Aventura, FL 33180
(786) 200-4316
gabriel@edelsberglaw.com
omer@edelsberglaw.com

Edwin Elliott (*pro hac vice* forthcoming)
Shamis & Gentile, P.A.
14 NE 1st Ave, Suite 705
Miami, FL 33132
edwine@shamisgentile.com
(305) 479-2299

*Counsel for Plaintiff and the Proposed Class*